UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    Plaintiff,

                                                    Case No. 25-cr-0036-bhl-1

          v.

ROMEO R MCELROY,

                    Defendant.

## ORDER

Defendant Romeo R. McElroy moves for revocation or amendment of a magistrate judge's order of detention. (ECF No. 48); *see also* 18 U.S.C. §3145(b). The district court reviews a magistrate judge's detention ruling independently. *See United States v. Wilks*, 15 F.4th 842, 847 (7th Cir 2021). In conducting the review, the Court may "start from scratch" and hold a new hearing or evaluate the record of the proceedings before the magistrate judge. *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991). For the reasons that follow, the Court will deny McElroy's motion based on the existing record and cancel the previously scheduled hearing.

## FACTUAL BACKGROUND

On March 4, 2025, a grand jury returned an eight-count indictment charging McElroy and his co-defendant Shelby Ann Iverson with: one count of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. §1951(a); one count of attempted Hobbs Act robbery in violation of 18 U.S.C. §§1951(a) and 2(a); four counts of Hobbs Act robberies in violation of 18 U.S.C. § 1951(a); and two counts of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c)(1)(A)(ii) and 2(a). (ECF No. 1.) McElroy is charged in all eight counts and all are crimes of violence. (*Id.*) He is alleged to have entered five different businesses demanding money over the course of three days in August 2024. (*Id.*) In two of the robberies, he is alleged to have pointed a gun at robbery victims. (*Id.* at 3, 7.) His co-defendant, Iverson, is alleged to have been the driver of the getaway car and, according to the government, did not leave the vehicle

during any of the robberies. (ECF No. 51 at 4.) When interviewed by law enforcement, Iverson implicated both herself and McElroy in each of the robberies. (*Id.* at 8.)

On March 10, 2025, after a hearing, Magistrate Judge Duffin ordered McElroy detained pending trial. (ECF No. 18.) Judge Duffin concluded that McElroy's alleged repeated use of a firearm during a crime of violence strongly supported detention and that the weight of the evidence against McElroy suggested he committed the crimes charged. (ECF No. 17 at 2.) Judge Duffin then determined that no conditions would prevent these violent robberies from happening again and ordered McElroy detained to assure the safety of the community. (*Id.*; *see also* ECF No. 18 at 2.)

On June 3, 2025, McElroy filed a "motion for detention hearing for release." (ECF No. 32.) Judge Duffin denied the motion by text only order the next day, explaining that McElroy's motion did not present any new evidence sufficient to warrant reconsidering his detention decision. (ECF No. 38.) On June 18, 2025, McElroy filed a motion for revocation or amendment of the detention order pursuant to 18 U.S.C. §3145(b). (ECF No. 48.)

## LEGAL STANDARD

A defendant charged with an offense may be released on personal recognizance, released on conditions, temporarily detained, or detained. 18 U.S.C. §3142(a). Detention is appropriate if no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. §3142(e)(1). In terms of community safety, Congress has attempted to narrow the set of cases in which detention is ordered, targeting offenses involving serious drug trafficking and felonies involving firearms. 18 U.S.C. §3142(f)(1)(C), (E). In making a detention determination, the Court considers the nature and circumstances of the offenses charged, including whether the offense involves a controlled substance, firearm, explosive, or destructive device; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. §3142(g).

Certain offenses, including violations of 18 U.S.C. §924(c), carry a rebuttable presumption that no condition(s) will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. §3142(e)(3)(B). This presumption shifts the burden of production to the defendant to come forward with some evidence that if released he will not flee or endanger the community. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). The burden of production

is not a heavy one to meet; any evidence favorable to a defendant that comes within a category listed in §3142(g) can suffice. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Even if it is rebutted, however, the presumption remains in the case as an evidentiary finding militating against release. *See id.* The government always bears the ultimate burden of persuasion, *see Wilks*, 15 F.4th at 846–47; *Dominguez*, 783 F.2d at 706–07, and must prove danger by clear and convincing evidence and flight risk by a preponderance of the evidence, *Portes*, 786 F.2d at 764–65.

A detention decision is not necessarily final. A defendant ordered detained can seek to re-open the detention hearing if he presents new information that has a material bearing on the issue whether there are conditions of release that will reasonably assure his appearance and the safety of the community. *See* 18 U.S.C. §3142(f)(2).

## DISCUSSION

Based on the record presented to Judge Duffin and the parties' briefing, the Court concludes that detention is warranted in this case.[1] McElroy stands charged with a series of violent felonies, including repeated Hobbs Act robberies. He allegedly entered five different business in Milwaukee wearing a black face mask and, in two of the robberies, he is alleged to have pointed a gun at a member of the community working at the business being robbed. The parties agree that a rebuttable presumption for detention under 18 U.S.C. §3142(e)(3)(B) is applicable based on the indictment charging McElroy with two counts of brandishing a firearm during a crime of violence. (ECF No. 51 at 3; ECF No. 52 at 2.) The Court therefore presumes that no condition or combination of conditions will reasonably assure the appearance of McElroy and the safety of the community.

The government argues that McElroy's acts of violence are especially concerning and the community expects to be protected from people who commit such violent and numerous offenses. (ECF No. 51 at 9.) The Court agrees and, like Judge Duffin, finds that there are no conditions or combination of conditions that will reasonably assure the safety of the community given

---

[1] A detention order may be reviewed pursuant to 18 U.S.C. § 3145(b) which provides: (b) Review of a Detention Order.—If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

McElroy's violent conduct. The Court also concludes that the other Section 3142(g) factors also favor detention.

As previously noted, the offenses charged are very serious. McElroy has been implicated in a series of Hobbs Act robberies and is alleged to have brandished a gun in two of those crimes of violence. The weight of the evidence against him is also strong. Surveillance footage captured four of the five robberies and while the suspect was masked during each of the robberies, the footage provided a profile of the suspect, what he was wearing, and the suspect vehicle. The government asserts that McElroy's fingerprints were recovered at the location of the first robbery on a bag that the clerk told police he saw the suspect touch. (ECF No. 51 at 7.) After the arrest, Iverson was interviewed by law enforcement and admitted that she was the driver of the car for each of the robberies and that McElroy, her live-in boyfriend, was the robber and gunman for each of the robberies. (*Id.* at 8.) Iverson told police that they needed money to pay their rent. (*Id.*) Finally, and as acknowledged by McElroy, historical cell site records place McElroy's cell phone in the area of the businesses at the times that they were robbed. (*Id.*; ECF No. 49 at 5.)

In response, McElroy argues that the witnesses provided various descriptions of the gunman that do not match McElroy. (ECF No. 49 at 5.) This argument is mostly moot because McElroy's physical appearance was captured on the surveillance footage for most of the incidents. Again, the evidence against McElroy, including statements from his co-defendant, is strong.

McElroy notes that other factors weigh in favor of his release on bond. He argues that his character, physical and mental condition, lack of criminal history, family and community ties, and employment weigh in favor of release. (ECF No. 49 at 5–6.) He also cites risk assessments completed by Wisconsin JusticePoint Pretrial Services and Federal Pretrial Services recommending release. (*Id.* at 6.) With his motion for reconsideration before Judge Duffin, McElroy submitted a psychological evaluation that recommended his release with conditions. (*Id.* at 7 (citing ECF No. 33-1).) While these factors and cited reports support McElroy's position, they do not outweigh or erase the other factors identified above, which point to the potential danger to the community if he is released. The weight of the evidence shows that McElroy engaged in a spree of robberies and during two of those robberies pointed a gun at member of our community. He faces a severe mandatory minimum penalty and, if released, would pose a danger to the community given the alleged offenses.

Finally, McElroy notes (correctly) that in our society liberty is the norm and that persons should not be detained based solely on the nature of the charges. (ECF No. 52 at 1.) He also argues that the court should not make a preliminary determination of guilt in analyzing the weight of the evidence and detain based on that premature determination. (*Id.* at 1 –2.) But there is no indication that the magistrate judge's detention decision violated these precepts. After a *de novo* review of the entire record, the Court agrees with Judge Duffin that McElroy should be detained. The Court concludes that no hearing is necessary because the government has clearly carried its burden of proving that McElroy is a danger to the community.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Revocation or Amendment of Detention Order, ECF No. 48, is **DENIED**.

Dated at Milwaukee, Wisconsin on July 10, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge